(Decided, November 16th, 1898.)

---

THE GRAND FOUNTAIN UNITED ORDER OF TRUE REFORMERS OF RICHMOND, VA. *vs.* JAMES W. MURRAY.

*Benefit Society—Expulsion of Member—Liability of Corporation for Wrongful Act of an Officer—Appeal—Evidence admitted Subject to Exception.*

Where a benefit society is composed of an incorporated Supreme Lodge and unincorporated subordinate lodges or branches, members of the latter not being members of the former, the Supreme Lodge is not liable in an action of damages for the unauthorized and wrongful order of the chief executive officer directing a subordinate branch to expel a member.

A corporation is not liable for the wrongful acts of its officers or agents not done within the limits of their authority, unless such acts were previously authorized or subsequently adopted by the corporation.

When evidence is admitted subject to exception, the question of its admissibility cannot be considered on appeal, unless there was a motion to exclude it and a refusal by the trial court to grant the same.

Appeal from the Baltimore City Court (PHELPS, J.). The defendant's first prayer which was rejected by the Court, was that there is no evidence legally sufficient to entitle the plaintiff to recover, and that the verdict of the jury must be for the defendant.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, BOYD and PEARCE, JJ.

*George M. Lane* and *C. C. Fitzgerald* (with whom was *W. T. McGuinn* on the brief) for the appellant.

*Howard Bryant* and *Reuben Garey* for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

The appellant is a body corporate organized under the laws of the State of Virginia. Its charter name is "The Grand Fountain of the United Order of True Reformers," and the purposes for which it was formed are to provide a place of burial for deceased members, to defray the expenses of their funerals, to assist in the education and support of their widows and orphans and to give aid and assistance to its members in times of sickness and distress, and for such other benevolent objects as may be necessary. It has a capital stock, and its principal office is located in the City of Richmond. There are numerous subordinate Fountains in various States of the Union, and they are all under the jurisdiction of the Grand Fountain. These subordinate Fountains have their own constitutions and by-laws, framed by the central body, but the members are not members of the Grand Fountain. Both the Grand and subordinate Fountains have separate officers. The chief officer of the Grand Fountain is called the Grand Worthy Master. His duties, so far as we are advised

by the record, are defined in section 1, article 4, and section 8, article 5 of the constitution of the Grand Fountain. These duties are the ordinary and usual executive functions of such an officer. The appellee was a member of Guiding Star Subordinate Fountain. He had leased from the appellant a stable owned by it and situated on Saint Paul Street, in the City of Baltimore. His horse was killed by falling into a pit on these premises, and he demanded from the appellant compensation. Receiving no reply he brought suit before a magistrate and recovered a judgment for ninety-nine dollars. After this a letter " purporting " to have come from the Grand Worthy Master of the appellant corporation was read at a convention of Fountains in the City of Bal-. timore. This letter which was not produced at the trial —nor was its absence accounted for—contained the following instruction: " Remove Murray from the premises at once, fine him twenty-five dollars or expel him." This letter was read by W. L. Taylor, vice-president of the appellant, who presided at the convention. Subsequently at a regular meeting of Guiding Star Fountain the same letter was read by the same W. L. Taylor, who, according to custom, likewise presided for a portion of the time during the meeting of the subordinate Fountain; and the appellee was expelled. Because of this expulsion by the subordinate Fountain, which the appellee insists was wrongful and unlawful, he brought the pending suit claiming that he had sustained damages to the amount of three thousand dollars. It is not necessary to set forth the pleadings, it being sufficient to say that the *gravamen* of the declaration is that the appellant—the Virginia corporation—its officers and servants did unlawfully expel the appellee from said corporation, and that it had wantonly refused to reinstate him. The general issue was pleaded, the case went to trial before a jury and resulted in a verdict in favor of the plaintiff for one hundred and twenty-five dollars. From the judgment entered on that verdict this appeal was taken.

There are five bills of exception in the record. The

first, second, third and fourth were taken to rulings of the Court in admitting evidence. But as the evidence was admitted subject to exception and as no motion was made at the close of the testimony to exclude the evidence thus conditionally admitted, there was no final ruling that can be reviewed on this appeal. We therefore pass by these four exceptions and come to the fifth which brings up the rulings on the prayers.

The first prayer of the appellant was a demurrer to the evidence, and it therefore becomes necessary to determine whether there was any legally sufficient evidence to entitle the plaintiff to recover. The prayer is not too general for it raises the question of the legal sufficiency of the evidence to sustain a recovery. *West. Md. R. R.* v. *Carter*, 59 Md. 306; *Co. Com.* v. *Wise*, 75 Md. 43; *State use of James* v. *Kent Co.*, 83 Md. 383. The suit was not against the unincorporated subordinate Fountain which actually expelled the appellee, but against the body corporate of which he was not a member. That he was expelled by the Guiding Star Fountain is undisputed. That he was expelled because a letter purporting to have emanated from the chief executive officer of the appellant corporation directed the expulsion is equally free from doubt; and that this letter was read at the meeting of the members of the convention of the subordinate Fountains by a vice-president of the appellant corporation is not controverted. This is all the evidence there is in the record to show that the Grand Fountain was responsible for the appellee's expulsion. Was that legally sufficient to prove that the Grand Fountain either directly or through its officers and servants acting within the scope of their authority so as to bind the appellant, expelled him from Guiding Star Fountain? It will scarcely be contended that the corporation is responsible for the unauthorized tortious acts of its officers and servants not done in the line of their duty, unless those acts are subsequently sanctioned and ratified. If then it be assumed that the Grand Worthy Master actually did order the subordinate Fountain to expel the appellee there is nothing in the record to show

that he possessed the slightest authority to issue such an order, or that the subordinate Fountain was under any obligation whatever to obey it. Indeed such parts of the constitution of the Grand Fountain as are in the record negative the suggestion that he possessed any such power at all. If in fact he attempted to exercise it, it was a clear usurpation which could not bind the corporation unless subsequently ratified by it; and there is not a shred of evidence to establish such a ratification. Unless we are prepared to hold that the unauthorized and wrongful order of the chief executive officer of the body corporate directing a subordinate lodge to expel a member of that subordinate lodge, is an act of the body corporate itself, there is not the slightest semblance of evidence upon which a verdict against the appellant can rest. We can adopt no such proposition without departing from firmly settled principles. "While, on the one hand, it is right to consider the agents and servants of corporations as clothed with liberal discretion in the exercise of the authority given them, and to hold the corporation liable for all acts done within the limits of that discretion, on the other hand, it is but just and right that corporations and their innocent stockholders should not be made to suffer the consequences of the wrongful acts of such agents and servants acting beyond the limits of their authority. . . . And for all acts done within the scope of the employment and the limits of the implied authority, the master is liable, however erroneous, mistaken or malicious such acts may be; but for acts done beyond that limit the corporation cannot be made liable, unless express authority be shown, or there be subsequent adoption or ratification of the act complained of." *Carter* v. *The Howe Machine Co.*, 51 Md. 295-6; *Central Ry. Co.* v. *Brewer*, 78 Md. 401; *Poulton* v. *Lond. & S. W. R. Co.*, L. R. 2 Q. B. 534; *Allen* v. *Lond. & S. W. R. Co.*, L. R. 6 Q. B. 65.

Without going into a discussion of other questions raised we content ourselves with saying that for the reasons we have given the first prayer of the defendant ought to have been granted. Because of its rejection the judgment must be reversed.

Md.]                        Syllabus.

Inasmuch as the first, second, third and fourth bills of exception are not properly before us, the cost of their being printed in the record must be borne by the appellant.

> *Judgment reversed with costs above and below, except as just indicated to the contrary.*

(Decided November 17th, 1898.)